# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**
**CRIMINAL DIVISION**
VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

**V.**

SHOLEH A. HAMEDANI,
NASSER V. HAMEDANI,



DEFENDANT.

---

# INDICTMENT

18 U.S.C. § 371 - Conspiracy; 15 U.S.C. §§ 78j(b),
78ff; 17 C.F.R. § 240.10b-5 - Securities Fraud; 18
U.S.C. § 1348 - Securities Fraud; 15 U.S.C. § 78ff, 17
C.F.R. § 240.13b2-2 - False Statements to Accountants;
15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff, 17
C.F.R. § 240.13b2-1 - Falsifying Books, Records, and
Accounts; 18 U.S.C. § 1505 - Obstruction of Justice;
18 U.S.C. § 2 - Aiding and Abetting; 18 U.S.C. § 981;
28 U.S.C. § 2461 - Forfeiture

---

A true bill.

_____
Foreman

Filed in open court this ___ day of
_____

**BETTY P. LEE**
_____
Clerk

Nandor J. Vadas
United States Magistrate Judge

Bail, $ No bail warrant

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☒ SUPERSEDING

### OFFENSE CHARGED

SEE ATTACHMENT FOR DETAIL OF CHARGES

COUNT 1 THROUGH 10: BOTH DEFENDANTS
COUNT 11: SHOLEH A. HAMEDANI ONLY
COUNT 12: NASSAR V. HAMEDANI ONLY

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:
    SEE ATTACHMENT

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

DEFENDANT - U.S

SHOLEH A. HAMEDANI and NASSAR V. HA...

DISTRICT COURT NUMBER

CR 06-0504 VRW
9

### DEFENDANT

**IS *NOT* IN CUSTODY**
    Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
    summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
    If answer to (6) is "Yes", show name of institution

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
    ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☒ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form    JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    TIMOTHY J. LUCEY

Has detainer ☐ Yes been filed? ☐ No — If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:      Before Judge:

Comments:

# ATTACHMENT

**Count One: 18 U.S.C. § 371 (Conspiracy to Commit Securities Fraud, False Statements to Accountants, and Falsifying Books, Records, and Accounts)**

**Count Ten: 18 U.S.C. § 371 (Conspiracy to Commit Obstruction)**

> **Maximum Penalties:** Five (5) years imprisonment; a fine of up to $250,000 or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Counts Two through Five: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud); 18 U.S.C. § 2 (Aiding and Abetting)**

> **Maximum Penalties:** Twenty (20) years imprisonment; a fine of up to $5,000,000 fine or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Count Six: 18 U.S.C. § 1348 (Securities Fraud)**

> **Maximum Penalties:** Twenty-five (25) years imprisonment; a fine of up to $250,000 or twice the amount of gain or loss, whichever is greater; five (5) years supervised release; $100 special assessment

**Counts Seven and Eight: 15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2 (False Statements to Accountants); 18 U.S.C. § 2 (Aiding and Abetting)**

> **Maximum Penalties:** Twenty (20) years imprisonment; a fine of up to $5,000,000 fine or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Count Nine: 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff; 17 C.F.R. § 240.13b2-2 (Falsifying Books, Records, and Accounts); 18 U.S.C. § 2 (Aiding and Abetting)**

> **Maximum Penalties:** Twenty (20) years imprisonment; a fine of up to $5,000,000 fine or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Counts Eleven and Twelve: 18 U.S.C. § 1505 (Obstruction)**

> **Maximum Penalties:** Five (5) years imprisonment; a fine of up to $250,000 or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Counts One through Five Include a Forfeiture Allegation**

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |
|---|

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☒ SUPERSEDING

———— **OFFENSE CHARGED** ————

SEE ATTACHMENT FOR DETAIL OF CHARGES ☐ Petty

COUNT 1 THROUGH 10: BOTH DEFENDANTS ☐ Minor
COUNT 11: SHOLEH A. HAMEDANI ONLY
COUNT 12: NASSAR V. HAMEDANI ONLY ☐ Misde-
meanor

☒ Felony

PENALTY:
SEE ATTACHMENT

—— Name of District Court, and/or Judge/Magistrate Location ——

NORTHERN DISTRICT OF CALIFORNIA

SEALED BY ORDER OF THE COURT

┌─ **DEFENDANT - U.S** ─────────

▶ SHOLEH A. HAMEDANI and NASSAR V. HAMEDANI

DISTRICT COURT NUMBER
CR-06-0504 VRW
06

—————————— **DEFENDANT** ——————————

———— **PROCEEDING** ————

Name of Complaintant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY ☐ DEFENSE

**SHOW**
**DOCKET NO.**

☒ this prosecution relates to a
pending case involving this same
defendant

**MAGISTRATE**
**CASE NO.**

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   TIMOTHY J. LUCEY

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes   If "Yes"
been filed? ☐ No   give date
filed

DATE OF ▶ Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶ Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

———— **ADDITIONAL INFORMATION OR COMMENTS** ————

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time:   Before Judge:

Comments:

# ATTACHMENT

**Count One: 18 U.S.C. § 371 (Conspiracy to Commit Securities Fraud, False Statements to Accountants, and Falsifying Books, Records, and Accounts)**

**Count Ten: 18 U.S.C. § 371 (Conspiracy to Commit Obstruction)**

> **Maximum Penalties:** Five (5) years imprisonment; a fine of up to $250,000 or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Counts Two through Five: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud); 18 U.S.C. § 2 (Aiding and Abetting)**

> **Maximum Penalties:** Twenty (20) years imprisonment; a fine of up to $5,000,000 fine or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Count Six: 18 U.S.C. § 1348 (Securities Fraud)**

> **Maximum Penalties:** Twenty-five (25) years imprisonment; a fine of up to $250,000 or twice the amount of gain or loss, whichever is greater; five (5) years supervised release; $100 special assessment

**Counts Seven and Eight: 15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2 (False Statements to Accountants); 18 U.S.C. § 2 (Aiding and Abetting)**

> **Maximum Penalties:** Twenty (20) years imprisonment; a fine of up to $5,000,000 fine or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Count Nine: 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff; 17 C.F.R. § 240.13b2-2 (Falsifying Books, Records, and Accounts); 18 U.S.C. § 2 (Aiding and Abetting)**

> **Maximum Penalties:** Twenty (20) years imprisonment; a fine of up to $5,000,000 fine or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Counts Eleven and Twelve: 18 U.S.C. § 1505 (Obstruction)**

> **Maximum Penalties:** Five (5) years imprisonment; a fine of up to $250,000 or twice the amount of gain or loss, whichever is greater; three (3) years supervised release; $100 special assessment

**Counts One through Five Include a Forfeiture Allegation**

1   JOSEPH P. RUSSONIELLO (CSBN 44332)
    United States Attorney
2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11   UNITED STATES OF AMERICA,            )   No.    CR 09 - 0504 VRW
                                          )
12              Plaintiff,                )   VIOLATIONS:
                                          )
13        v.                              )   18 U.S.C. § 371 (Conspiracy); 15 U.S.C. §§
                                          )   78j(b), 78ff, 17 C.F.R.§ 240.10b-5 (Securities
14   SHOLEH A. HAMEDANI,                  )   Fraud); 18 U.S.C. § 1348 (Securities Fraud);
     NASSER V. HAMEDANI,                  )   15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2
15                                        )   (False Statements to Accountants);
                Defendants.               )   15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and
16                                        )   78ff, 17 C.F.R. § 240.13b2-1 (Falsifying
                                          )   Books, Records, and Accounts);
17                                        )   18 U.S.C. § 1505 (Obstruction of Justice);
     _____)   18 U.S.C. § 2 (Aiding and Abetting);
18                                            18 U.S.C. § 981, 28 U.S.C. § 2461
                                              (Forfeiture)
19
                                              SAN FRANCISCO VENUE
20

21                       S U P E R S E D I N G   I N D I C T M E N T

22        The Grand Jury charges:

23                       Relevant Persons and Entities

24        1.     At all relevant times, defendant SHOLEH A. HAMEDANI was a resident of

25   Danville, California. From on or about August 2002 until on or about October 2006, SHOLEH

26   A. HAMEDANI was identified in the company's public filings as the chief executive officer,

27   chief financial officer, and the chair of the board of directors of The Children's Internet, Inc.

28   ("TCI").

                                                 1

2. At all relevant times, NASSER V. HAMEDANI was a resident of Danville, California. From on or about July 2002 through on or about October 2006, NASSER V. HAMEDANI was the *de facto* chairman of the board of directors and chief executive officer of TCI, although he was never identified or disclosed as a board member or an officer of TCI in the company's public filings.

3. At all relevant times, TCI was a Nevada corporation incorporated on or about 1996. From on or about 1996 through on or about 2001, TCI was known as DWC Installations, Inc. ("DWC"), with its principal place of business in the State of Florida. On or about July 2002, SHOLEH A. HAMEDANI and NASSER V. HAMEDANI bought the company and the name was changed to TCI. At that time, SHOLEH A. HAMEDANI and NASSER V. HAMEDANI operated TCI from an office in San Ramon, California, and later moved to Pleasanton, California. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI said TCI was a start-up company in the process of developing and marketing software designed to restrict and protect children's access to the internet. Beginning on or about March 2006, TCI began selling its internet website portal to consumers, who accessed the portal by paying a subscription fee to TCI. This corporation will be referred to collectively hereinafter as TCI.

4. At all relevant times, Two Dog Net, Inc. ("Two Dog Net") was a Utah corporation, incorporated on or about July 1983. Two Dog Net operated out of the same office that TCI occupied in Pleasanton, California. Two Dog Net was also controlled by NASSER V. HAMEDANI and SHOLEH A. HAMEDANI. In its public and promotional statements, TCI said Two Dog Net developed the product that TCI eventually sold.

5. At all relevant times, Shadrack Films, Inc. ("Shadrack Films") was a California corporation, incorporated on or about May 31, 2002. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI created Shadrack Films as a shell company to serve as the majority shareholder of TCI. SHOLEH A. HAMEDANI was Shadrack's sole officer, director, and shareholder.

## Obligations of Publicly Traded Companies

6. Beginning on or about February 23, 2005, TCI's common stock was publicly

SUPERSEDING INDICTMENT                    2

1    traded under the ticker symbol "CITC" on the OTC Bulletin Board, a national securities

2    exchange that uses the means and instrumentalities of interstate commerce and the mails. At all

3    relevant times, the OTC Bulletin Board was administered by the National Association of

4    Securities Dealers ("NASD").

5        7.      As a public company, TCI was required to comply with the Securities Act of 1933

6    and the Securities Exchange Act of 1934 as well as the regulations of the United States Securities

7    and Exchange Commission (the "SEC"). Those statutes and regulations are designed to protect

8    the investing public by, among other things, ensuring that a company's financial information is

9    accurately recorded, audited and disclosed to the public.

10       8.      Under the Securities Exchange of 1934, an application to register a security for

11   sale on a national securities exchange, unless otherwise exempted or modified by the SEC, shall

12   contain such information, in such detail, as to the issuer and any person directly or indirectly

13   controlling or controlled by, or under direct or indirect common control with, the issuer, in

14   respect of, among other things,  the following:  (a) the organization, financial structure, and

15   nature of the business; (b) the terms on which their securities are to be, and during the preceding

16   three years have been, offered to the public or otherwise; (c) material contracts, not made in the

17   ordinary course of business, which were made not more than two years before such filing; and,

18   (d) the directors, officers, and underwriters, and each security holder of record holding more than

19   10 percent per centum of any equity security of the issuer, their remuneration and their interests

20   in the securities of, and their material contracts with, the issuer and any person directly or

21   indirectly controlling or controlled by, of under direct or indirect control with, the issuer.

22       9.      Under SEC regulations, control means the possession, direct or indirect, of the

23   power to direct or cause the direction of the management and policies of a person, whether

24   through the ownership of voting securities, by contract, or otherwise.

25       10.     Under SEC regulations, a beneficial owner of a security includes any person who,

26   directly or indirectly, through any contract, arrangement, understanding, relationship, or

27   otherwise has or shares investment power which includes the power to dispose, or to direct the

28   ////

SUPERSEDING INDICTMENT            3

1   disposition of such security.

2       11.    Under SEC regulations, all securities of the same class beneficially owned by a

3   person, regardless of the form which such beneficial ownership takes, shall be aggregated in

4   calculating the number of shares beneficially owned by such person.

5       12.    Under SEC regulations, any person who, directly or indirectly creates, or uses a

6   trust, proxy, power of attorney, pooling arrangement, or any other contract, arrangement, or

7   device with the purpose or effect of divesting such person of beneficial ownership as part of a

8   plan or scheme to evade the reporting requirements shall be deemed to be beneficial owner of the

9   subject security.

10      13.    Under SEC regulations, TCI and its officers and directors also had a duty to,

11  among other things:  (a) make and keep books, records and accounts that fairly and accurately

12  reflected the company's business transactions; (b) devise and maintain a system of internal

13  accounting controls sufficient to provide reasonable assurances that the company's transactions

14  were recorded as necessary to permit preparation of reliable financial statements; (c) file annual

15  reports (on SEC Form 10-KSB) and quarterly reports (on SEC Form 10-QSB) with the SEC.

16  Among the information presented in these SEC filings was TCI's management and board of

17  directors, the number of shares issued by TCI, and TCI's total current assets and liabilities.

18      14.    From on or about July 2002 to on or about July 2004, Stonefield Josephson, LLC

19  ("Stonefield"), an independent registered public accounting firm, acted as the outside auditor for

20  TCI.  Stonefield conducted annual audits and quarterly reviews of TCI's financial statements, and

21  assisted TCI's preparation of its SEC filings, such as Forms SB-2 and 424B2.  Stonefield also

22  required, in connection with its audits and quarterly reviews, that certain members of TCI

23  management execute and deliver to Stonefield documents known as "management representation

24  letters," in which SHOLEH A. HAMEDANI made representations about the manner in which

25  TCI's financial information was prepared and presented.

26      15.    From on or about July 2004 to on or about October 2006, Marc Lumer &

27  Company, LLC ("Marc Lumer"), an independent registered public accounting firm, acted as the

28  outside auditor for TCI.  Marc Lumer conducted annual audits and quarterly reviews of TCI's

SUPERSEDING INDICTMENT          4

1  financial statements, and assisted TCI's preparation of its SEC filings, such as Forms 10-KSB
2  and 10-QSB. Marc Lumer also required, in connection with its audits and quarterly reviews, that
3  certain members of TCI management execute and deliver to Marc Lumer documents known as
4  "management representation letters," in which SHOLEH A. HAMEDANI made representations
5  about the manner in which TCI's financial information was prepared and presented.

6  16.  Under SEC regulations, no officer or director of an issuer shall, directly or
7  indirectly, make or cause to be made a materially false or misleading statement to an accountant
8  in connection with any audit, review, or examination of the financial statements of the issuer
9  required to be made or in the preparation or filing of any document or report required to be filed
10 with the SEC.

11  17.  TCI's fiscal year ended on December 31st of each calendar year.

12

13                              The Scheme to Defraud

14  18.  From on or about February 2002 until at least on or about October 2006,
15 SHOLEH A. HAMEDANI, NASSER V. HAMEDANI, and others participated in a scheme to
16 defraud by selling securities in TCI that generated approximately $2.9 million and, contrary to
17 representations they made to investors, fraudulently diverted approximately $1.2 million to pay
18 for their own personal expenses, including gambling, automobiles, and home mortgages.
19 SHOLEH A. HAMEDANI and NASSER V. HAMEDANI carried out this scheme in the
20 following manner:

21         a.  Between on or about February 2002 and on or about July 2002, SHOLEH
22 A. HAMEDANI and NASSER V. HAMEDANI solicited and sold shares in TCI in order to
23 generate the funds to purchase TCI for themselves;

24         b.  Between on or about February 2003 and on or about February 2005,
25 SHOLEH A. HAMEDANI and NASSER V. HAMEDANI fraudulently sold more shares than
26 they registered with the SEC while diverting investor monies to uses other than TCI;

27         c.  On or about February 2005, SHOLEH A. HAMEDANI and NASSER V.
28 HAMEDANI caused TCI to file a document with the SEC in which TCI made fraudulent

SUPERSEDING INDICTMENT                5

1  representations about the date and price of its most recent sale of stock in order to obtain
2  additional shares for themselves in TCI;

3          d.      Later, on or about February 2005, SHOLEH A. HAMEDANI and
4  NASSER V. HAMEDANI caused TCI to make series of filings with the SEC in which TCI made
5  fraudulent representations about management's purported discovery of a so-called October 11,
6  2002 loan agreement that provided for a 4-to-1 stock exchange and approximately 4,400,000
7  shares of additional TCI stock;

8          e.      Later, on or about February 2005, SHOLEH A. HAMEDANI and
9  NASSER V. HAMEDANI withheld certificates from investors preventing them from selling
10 their shares, even as they arranged for the sale of TCI stock that generated profits for themselves
11 of approximately $1.6 million.

12      19.     Between on or about February 2002 and on or about December 31, 2005,
13 SHOLEH A. HAMEDANI and NASSER V. HAMEDANI generated profits in excess of
14 approximately $2.8 million as a result of this scheme to defraud.

15      *Diversion of Investors Funds to Buy Controlling Interest in TCI*

16      20.     On or about February 2002, SHOLEH A. HAMEDANI and NASSER V.
17 HAMEDANI and others began to solicit investors to purchase shares in TCI. SHOLEH A.
18 HAMEDANI and NASSER V. HAMEDANI represented, among other things, that TCI was
19 seeking investors in advance of an intended public offering on a national securities exchange and
20 needed investment capital to develop and market its internet software product. SHOLEH A.
21 HAMEDANI and NASSER V. HAMEDANI and others further represented, among others
22 things, that the shares could potentially become more valuable after the company was listed and
23 publicly traded.

24      21.     Between on or about February 2002 and on or about July 2002, SHOLEH A.
25 HAMEDANI and NASSER V. HAMEDANI and others raised approximately $700,000 from
26 investors by promising them shares in TCI.

27      22.     In fact, between on or about February 2002 and on or about July 2002, SHOLEH
28 A. HAMEDANI and NASSER V. HAMEDANI and others, in contravention of SEC statutes and

SUPERSEDING INDICTMENT          6

1  regulations, solicited and sold shares in TCI before they even controlled TCI in order to generate
2  the funds necessary to purchase TCI for themselves.

3      23.    On or about July 3, 2002, SHOLEH A. HAMEDANI and NASSER V.
4  HAMEDANI fraudulently diverted approximately $150,000 of the approximately $700,000
5  raised from investors to Shadrack Films, a company controlled by SHOLEH A. HAMEDANI,
6  which then used the money to purchase control of TCI.

7      *Misrepresentations in SEC Filings Prior to Initial Public Offering*

8      24.    On or about February 10, 2003, SHOLEH A. HAMEDANI and NASSER V.
9  HAMEDANI caused TCI to file Form SB-2 (also known as a registration statement) with the
10  SEC in order to identify and register TCI's existing shares.

11      25.    The Form SB-2 represented, among other things, that the number of outstanding
12  shares of TCI was approximately 2,287,755. Of those, Shadrack Films held approximately
13  1,166,000 shares, while approximately 1,118,000 shares were held by other shareholders. The
14  Form SB-2 also stated that TCI intended to offer approximately 4,000,0000 new, additional
15  shares on a national securities exchange.

16      26.    On or about May 5, 2004, TCI's registration was deemed effective by the SEC as
17  to existing shares of approximately 2,287,755 as well as the new, additional shares of
18  approximately 4,000,000.

19      27.    On or about May 13, 2004, SHOLEH A. HAMEDANI and NASSER V.
20  HAMEDANI caused TCI to file Form 424B2, an investor prospectus, with the SEC, in advance
21  of its anticipated listing on a national securities exchange.

22      28.    The prospectus reaffirmed that the TCI had approximately 2,287,755 existing
23  shares, of which approximately 1,166,000 were controlled by Shadrack Films, while
24  approximately 1,118,000 were held by other investors. The prospectus also reiterated the
25  intended new offering of approximately 4,000,000 shares on a national securities exchange.

26          *a.    Use of Investor Money*

27      29.    Between on or about February 2002 and on or about February 21, 2005, SHOLEH
28  A. HAMEDANI and NASSER V. HAMEDANI sold investors shares in TCI, representing that

SUPERSEDING INDICTMENT          7

1    the money raised would be used for the benefit of TCI.

2    30.    On or about February 10, 2003, the Form SB-2 represented to potential investors,
3    among other things, that proceeds from the sale of the securities to be offered would be used for
4    TCI's marketing and advertising, technical operations, reserve for contingencies, and working
5    capital, and general corporate purposes.

6    31.    On or about May 13, 2004, the Form 424B2 prospectus represented to potential
7    investors, among other things, that proceeds from the sale of the securities to be offered would be
8    used for TCI's marketing and sales plan, technical operations, and general operating capital.

9    32.    From on or about February 2002 through on or about February 21, 2005,
10   SHOLEH A. HAMEDANI and NASSER V. HAMEDANI sold a total of approximately
11   2,100,000 shares to investors and generated approximately $2,900,000 as investments in TCI.

12   33.    In fact, from on or about February 2002 through on or about February 21, 2005,
13   and in contravention of SEC statues and regulations, SHOLEH A. HAMEDANI and NASSER
14   V. HAMEDANI spent only a fraction of the money raised from the sale of TCI stock on expenses
15   relating to TCI, while diverting the remainder to pay their personal expenses and other uses,
16   unrelated to TCI.

17              *b.    Oversubscription of TCI Stock*

18   34.    On or about July 23, 2004, SHOLEH A. HAMEDANI and NASSER V.
19   HAMEDANI were advised that the NASD would not approve its application for a listing on a
20   national securities exchange if it included a direct public offering of approximately 4,000,000
21   new shares of TCI stock.

22   35.    On or about October 19, 2004, SHOLEH A. HAMEDANI and NASSER V.
23   HAMEDANI caused TCI to file a post-registration amendment in which it notified the SEC that
24   it was withdrawing its direct public offering of approximately 4,000,000 new shares in TCI stock
25   but maintaining its registration of approximately 2,287,755 existing shares of TCI stock.

26   36.    On or about December 24, 2004, the NASD approved TCI's application for listing
27   and trading of its stock on the OTC Bulletin Board.

28   37.    Between on or about February 2002 and on or about February 21, 2005, and in

SUPERSEDING INDICTMENT                8

1  contravention of SEC statues and regulations, SHOLEH A. HAMEDANI and NASSER V.
2  HAMEDANI had sold approximately 2,100,000 of the approximately 2,287,755 existing shares
3  of TCI stock that had been previously registered with the SEC.

4      38.    On or about February 21, 2005, SHOLEH A. HAMEDANI and NASSER V.
5  HAMEDANI retained approximately 1,166,000 shares of TCI for themselves through their
6  control of Shadrack Films. When combined with the approximately 2,100,000 shares of TCI
7  already sold to investors, SHOLEH A. HAMEDANI and NASSER V. HAMEDANI had
8  exceeded TCI's registered shares by approximately 1,000,000 shares.

9      *Shadrack Films Obtains Additional Shares Prior to Initial Public Offering*

10     39.    On or about February 22, 2005, SHOLEH A. HAMEDANI and NASSER V.
11  HAMEDANI caused TCI to file a Form 8-K in which TCI stated that its board of directors had
12  approved the conversion of debt owed by TCI to Shadrack Films in exchange for shares of TCI
13  stock.

14     40.    The filing stated that Shadrack Films was receiving approximately 6,527,314
15  shares of TCI stock upon conversion of TCI's current debt to Shadrack Films of approximately
16  $457,000, priced at a conversion price of $.07 per share, based on the most recent sale of a share
17  of TCI's common stock which occurred in October 2002 in a private transaction.

18     41.    In fact, on or about February 22, 2005, and in contravention of SEC statutes and
19  regulations, SHOLEH A. HAMEDANI and NASSER V. HAMEDANI knew that there had been
20  thousands of shares of TCI stock to numerous investors between on or about October 2002 and
21  on or about February 22, 2005, at prices ranging from $.50 to $2.00 per share. Through this
22  transaction, SHOLEH A. HAMEDANI and NASSER V. HAMEDANI ensured they would
23  continue to own the majority of shares of TCI through Shadrack Films.

24     *Restatement Based on Fraudulent October 11, 2002 Loan Agreement*

25     42.    On or about February 23, 2005, TCI's stock began trading on the OTC Bulletin
26  Board.

27     43.    On or about April 20, 2005, SHOLEH A. HAMEDANI and NASSER V.
28  HAMEDANI caused TCI to file a series of documents with the SEC regarding a restatement of

SUPERSEDING INDICTMENT              9

1  prior earnings based on a fraudulent loan agreement that was purportedly executed on or about
2  October 11, 2002.

3       44.     On or about April 20, 2005 (in a Form 8-K) , on or about June 8, 2005 (in a Form
4  10-KSB), and on or about August 15, 2005 (in a Form 10-QSB), TCI made various
5  representations, including that its management had discovered a purported loan agreement that
6  TCI had entered into with five of its shareholders on or about October 11, 2002, but that the
7  agreement had not been disclosed in any of TCI's previous SEC filings or otherwise included as
8  an exhibit as a result of an error of omission.

9       45.     On or about August 15, 2005, in its Form10-QSB, SHOLEH A. HAMEDANI and
10 NASSER V. HAMEDANI represented that the so-called October 11, 2002 loan agreement
11 memorialized a 4-to-1 stock exchange in which the five shareholders received restricted shares in
12 exchange for their existing shares, generating approximately 4,400,000 additional shares.  The
13 so-called October 11, 2002 loan agreement went on to provide that the five shareholders had
14 agreed to loan the proceeds from the sale of their original unrestricted shares to Two Dog Net,
15 Inc., which would then loan funds to Shadrack Films, which would in turn loan funds to TCI.

16      46.     Later, on or about April 2005, SHOLEH A. HAMEDANI provided a copy of the
17 so-called October 11, 2002 loan agreement to TCI's outside auditor, to prepare the restatement of
18 its earnings.

19      47.     On or about June 23, 2005 and on or about August 10, 2005, SHOLEH A.
20 HAMEDANI executed management representation letters to TCI's outside auditors, in which she
21 represented, among other things, that (a) there were no material transactions that have not been
22 properly recorded in the accounting records underlying the interim financial information; and (b)
23 she had no knowledge of any fraud or suspected fraud affecting TCI involving management or
24 others where fraud could have a material effect on interim financial information.

25      48.     In fact, and in contravention of SEC statutes and regulations, SHOLEH A.
26 HAMEDANI and NASSER V. HAMEDANI fraudulently created the so-called October 11, 2002
27 loan agreement to cover up, after the fact, the sales of TCI stock to investors in numbers that
28 exceeded the number of shares that TCI had registered with the SEC by approximately

SUPERSEDING INDICTMENT          10

1 | 1,000,000.

2 | *Use of Nominee Accounts to Control Stock Sales*

3 | 49. On or about February 23, 2005, after TCI's shares began trading, SHOLEH A.
4 | HAMEDANI and NASSER V. HAMEDANI delayed the delivery of share certificates so they
5 | could sell TCI shares they controlled.

6 | *a. NASSER V. HAMEDANI Controlled TCI*

7 | 50. From on or about February 2002 through on or about October 2006, NASSER V.
8 | HAMEDANI controlled TCI by, among other things, arranging for the purchase of TCI, acting as
9 | Chairman of TCI, managing the sale of TCI shares to outside investors, and controlling the bank
10 | accounts into which TCI's investor monies were deposited.

11 | 51. In fact, and in contravention of SEC statutes and regulations, NASSER V.
12 | HAMEDANI never identified himself as having role in the management or control of TCI in any
13 | filing with the SEC, including TCI's Form SB-2 registration statement nor TCI's Form 424B2
14 | investor prospectus.

15 | *b. NASSER V. HAMEDANI Controlled Shares in Nominee Accounts*

16 | 52. Beginning on or about February 18, 2005, NASSER V. HAMEDANI arranged for
17 | two brokerage accounts to be opened in the name of two of his relatives, referred to hereinafter as
18 | Account A and Account B.

19 | 53. On or about February 23, 2005, approximately 60,000 shares of TCI stock were
20 | deposited into Account A, which were then immediately sold. By on or about May 2005, more
21 | than approximately 90,000 shares were sold from brokerage Account A.

22 | 54. On or about April 2005, approximately 24,000 TCI shares were sold from
23 | Account B. By on or about August 2005, approximately 830,000 shares of TCI stock were sold
24 | from Account B.

25 | 55. By on or about August 2005, sales of TCI shares from Accounts A and Account B
26 | had generated approximately $2 million, of which approximately $1.6 million was ultimately
27 | delivered to NASSER V. HAMEDANI.

28 | 56. In fact, between on or about February 2005 and on or about August 2005, and in

SUPERSEDING INDICTMENT 11

1    contravention of SEC statutes and regulations, SHOLEH A. HAMEDANI and NASSER V.

2    HAMEDANI failed to file with the SEC any statement of beneficial ownership relating to sales

3    of TCI stock by NASSER V. HAMEDANI for the shares in Account A and Account B .

4          *c.*    *Shares Certificates Withheld from Non-Affiliated Investors*

5       57.    On or about February 23, 2005, and in contravention of SEC statutes and

6    regulations, SHOLEH A. HAMEDANI and NASSER V. HAMEDANI failed to deliver or

7    otherwise transmit the certificates to all of TCI's non-affiliated investors until on or after April

8    28, 2005.

9       58.    Between on or about February 23, 2005 and on or about April 28, 2005, investors

10    who had previously purchased existing shares in TCI were unable to re-sell and otherwise trade

11    their shares on OTC Bulletin Board.

12

13           Investigation by the United States Securities and Exchange Commission

14       59.    At all relevant times, the SEC was an independent agency of the United States.

15    The SEC's Division of Enforcement, among other things, investigated possible violations of

16    federal securities statutes and regulations and brought administrative and civil actions to enforce

17    those statutes and regulations.

18       60.    On or about July 19, 2005, the SEC commenced an investigation into securities

19    fraud relating to the registration and sales of securities issues by TCI.

20       61.    On or about October 25, 2005, attorneys from the SEC's Division of Enforcement

21    conducted a sworn interview of SHOLEH A. HAMEDANI as a part of the SEC's investigation

22    into securities fraud relating to the registration and sales of securities issued by TCI.

23       62.    On or about October 26, 2005, attorneys from the SEC's Division of

24    Enforcement conducted a sworn interview of SHOLEH A. HAMEDANI as a part of the SEC's

25    investigation into securities fraud relating to the registration and sales of securities issued by TCI.

26       63.    On or about January 6, 2006, attorneys from the SEC's Division of Enforcement

27    conducted a sworn interview of NASSER V. HAMEDANI as a part of the SEC's investigation

28    into securities fraud relating to the registration and sales of securities issued by TCI.

1    64.    On or about January 9, 2006, attorneys from the SEC's Division of Enforcement
2    conducted a sworn interview of SHOLEH A. HAMEDANI as a part of the SEC's investigation
3    into securities fraud relating to the registration and sales of securities issued by TCI.

4    65.    On or about March 27, 2006, attorneys from the SEC's Division of Enforcement
5    conducted a sworn interview of NASSER V. HAMEDANI as a part of the SEC's investigation
6    into securities fraud relating to the registration and sales of securities issued by TCI.

7    66.    On or about March 31, 2006, attorneys from the SEC's Division of Enforcement
8    conducted a sworn interview of SHOLEH A. HAMEDANI as a part of the SEC's investigation
9    into securities fraud relating to the registration and sales of securities issued by TCI.

10    67.    On or about January 9, 2008, attorneys from the SEC's Division of Enforcement
11    conducted a sworn deposition of SHOLEH A. HAMEDANI as a part of the SEC's investigation
12    into securities fraud relating to the registration and sales of securities issued by TCI.

13    68.    On or about January 11, 2008, attorneys from the SEC's Division of Enforcement
14    conducted a sworn deposition of NASSER V. HAMEDANI as a part of the SEC's investigation
15    into securities fraud relating to the registration and sales of securities issued by TCI.

16    69.    Between on or about 2005 and on or about 2008, SHOLEH A. HAMEDANI and
17    NASSER V. HAMEDANI produced or otherwise provided documents and other materials to the
18    SEC, including a declaration sworn under penalty of perjury by SHOLEH A. HAMEDANI, that
19    was filed with the United States District Court for the Northern District of California.

20

21    COUNT ONE:    18 U.S.C. § 371 (Conspiracy to Commit Securities Fraud, False Statements to
22    Accountants, and Falsifying Books, Records, and Accounts)

23    70.    Paragraphs 1 through 69 are realleged as if fully set forth herein.

24    71.    Using the business entities that they controlled, and beginning on or about
25    February 2002 and continuing thereafter until at least on or about October 2006, in the Northern
26    ////
27    ////
28    ////

SUPERSEDING INDICTMENT          13

1 | District of California and elsewhere, the defendants,

2 | SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,

3 |

4 | and others unlawfully, willfully, and knowingly, did conspire and agree together and with each

5 | other to commit offenses against the United States, to wit: (a) fraud in connection with the

6 | purchase and sale of securities issued by TCI, in violation of Title 15, United States Code,

7 | Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) false

8 | and misleading statements and omissions of material fact in reports and document required to be

9 | filed under the Securities and Exchange Act of 1934 and the rules and regulations thereunder, in

10 | violation of Title 15, United States Code, Sections 78ff, and Title 17, Code of Federal

11 | Regulations, Section 240.13b2-2; and (c) falsified books, records, and accounts of TCI, in

12 | violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), and 78ff, and Title

13 | 17, Code of Federal Regulations, Section 240.13b2-1.

14 | 72. It was part and object of the conspiracy that SHOLEH A. HAMEDANI and

15 | NASSER V. HAMEDANI and others unlawfully, willfully, and knowingly, directly and

16 | indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails,

17 | and of facilities of national securities exchanges, used and employed, in connection with the

18 | purchase and sale of securities, manipulative and deceptive devices and contrivances by: (a)

19 | employing devices, schemes, and artifices to defraud; (b) making untrue statements of material

20 | fact and omitting to state material facts necessary in order to make the statements made, in light

21 | of the circumstances under which they were made, not misleading; and (c) engaging in acts,

22 | practices, and course of business which operated as a fraud and deceit upon members of the

23 | investing public and others, in connection with the purchase and sale of securities, in violation of

24 | Title 15, United States Code, Section 78j(b) and 78ff, and Title 17, Code of Federal Regulations,

25 | Section 240.10b-5.

26 | 73. It was also part and object of the conspiracy that SHOLEH A. HAMEDANI and

27 | NASSER V. HAMEDANI and others unlawfully, willfully, and knowingly, directly and

28 | indirectly, made and caused to be made materially false and misleading statements and omissions

SUPERSEDING INDICTMENT          14

1   to TCI's auditors in connection with the audit and examination of TCI's financial statements, and
2   in connection with the preparation of documents and reports required to be filed with the SEC,
3   and did knowingly and willfully omit to state material facts necessary in order to make
4   statements made, in light of the circumstances under which such statements were made, not
5   misleading, in violation of Title 15, United States Code, Sections 78ff, and Title 17, Code of
6   Federal Regulations, Section 240.13b2-2.

7       74.     It was also part and object of the conspiracy that SHOLEH A. HAMEDANI and
8   NASSER V. HAMEDANI and others unlawfully, willfully, and knowingly, directly and
9   indirectly, falsified and caused to be falsified books, records, and accounts of TCI, in violation of
10  Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), and 78ff, and Title 17, Code of
11  Federal Regulations, Section 240.13b2-1.

12

13                  The Manner and Means of the Conspiracy to Defraud

14      75.     Among the means and methods by which SHOLEH A. HAMEDANI and
15  NASSER V. HAMEDANI and others carried out this conspiracy were the following:

16          a.      SHOLEH A. HAMEDANI and NASSER V. HAMEDANI made
17  misrepresentations of material fact in written and oral communications to investors in order to
18  induce investors to purchase shares in TCI.

19          b.      SHOLEH A. HAMEDANI and NASSER V. HAMEDANI omitted
20  material facts in written and oral communications necessary in order to make the statements in
21  the written and oral communications to investors, under the circumstances they were made, not
22  misleading, in order to induce investors to purchase shares in TCI.

23          c.      SHOLEH A. HAMEDANI and NASSER V. HAMEDANI made
24  misrepresentations of material fact in documents filed with the SEC in order to induce investors
25  to purchase and retain shares in TCI.

26          d.      SHOLEH A. HAMEDANI and NASSER V. HAMEDANI omitted
27  material facts in documents filed with the SEC necessary in order to make the statements in the
28  SEC filings, under the circumstances they were made, not misleading, in order to induce

SUPERSEDING INDICTMENT            15

1 investors to purchase shares in TCI.

2 e. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI made
3 misrepresentations of material facts in management representation letters provided to TCI's
4 outside auditors.

5 f. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI omitted
6 material facts in management representation letters provided to TCI's outside auditors, in order
7 to make the statements in management representation letters, under the circumstances they were
8 made, not misleading.

9 g. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI created
10 fraudulent documents alleging a purported October 11, 2002 loan agreement, and then proceeded
11 to transmit and deliver those documents to, among others, TCI's outside auditors and the SEC.

12 h. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI
13 diverted money provided by investors contrary to the manner represented to investors in written
14 and oral communications to investors and in the documents filed with the SEC.

15 i. SHOLEH A. HAMEDANI and NASSER V. HAMEDANI withheld
16 certificates from investors preventing them from selling their shares, even as they arranged for
17 the sale of TCI stock that generated profits for themselves, and even as they failed to file the
18 appropriate statements of beneficial ownership with the SEC.

19 76. The purpose of this conspiracy and scheme to defraud was to obtain money from
20 investors so that the SHOLEH A. HAMEDANI and NASSER V. HAMEDANI could enrich
21 themselves and pay their own personal expenses, including gambling debts, residential
22 mortgages, and personal automobiles, in excess of approximately $1.2 million, as well as control
23 and manipulate the sale of TCI stock on the OTC Bulletin Board, so that SHOLEH A.
24 HAMEDANI and NASSER V. HAMEDANI could enrich themselves by approximately $1.6
25 million.

26

27 Overt Acts in Furtherance of Conspiracy to Defraud

28 77. In furtherance of the conspiracy and to effect the illegal objects thereof, SHOLEH

SUPERSEDING INDICTMENT 16

A. HAMEDANI and NASSER V. HAMEDANI committed and caused others committed the acts described above, which are hereby realleged as if fully set forth herein, and to commit the following overt acts, among others, in the Northern District of California and elsewhere:

a. On or about August 7, 2002, TCI transmitted a management representation letter to Stonefield, TCI's outside auditor, for fiscal period ending June 30, 2002.

b. On or about November 11, 2002, TCI transmitted a management representation letter to Stonefield, TCI's outside auditor, for the fiscal period ending September 30, 2002.

c. On or about February 10, 2003, TCI filed with the SEC Form SB-2, a registration statement.

d. On or about March 11, 2003, TCI transmitted a management representation letter to Stonefield, TCI's outside auditor, for the fiscal period ending December 31, 2002.

e. On or about June 26, 2003, TCI transmitted a management representation letter to Stonefield, TCI's outside auditor, for the fiscal period ending March 31, 2003.

f. On or about June 30, 2003, TCI transmitted a management representation letter to Stonefield, TCI's outside auditor, for the fiscal period ending December 31, 2002.

g. On or about February 26, 2004, TCI transmitted a management representation letter to Stonefield, TCI's outside auditor, for the fiscal period ending December 31, 2003.

h. On or about May 12, 2004, TCI filed with the SEC Form 424B2, a investor prospectus.

i. On or about February 22, 2005, TCI filed with the SEC Form 8-K, a current report relating to, among other things, TCI's most recent sale of existing stock.

j. On or about April 20, 2005, TCI filed with the SEC Form 8-K, a current report.

k. On or about June 8, 2005, TCI filed with the SEC Form 10-KSB, an annual report.

SUPERSEDING INDICTMENT                    17

1  l. On or about June 23, 2005, TCI transmitted a management representation

2  letter to Marc Lumer, TCI's outside auditor, for the fiscal period ending March 31, 2005.

3  m. On or about August 10, 2005, TCI transmitted a management

4  representation letter to Marc Lumer, TCI's outside auditor, for the fiscal period ending June 30,

5  2005.

6  n. On or about August 15, 2005, TCI filed with the SEC Form 10-QSB, a

7  quarterly report.

8  All in violation of Title 18, United States Code, Section 371.

9

10  COUNT TWO: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5 (Securities Fraud);

11  18 U.S.C. § 2 (Aiding and Abetting)

12  78. Paragraphs 1 through 69 and paragraphs 70 through 77, as to the factual

13  allegations only, are realleged as if fully set forth herein.

14  79. On or about February 22, 2005, in the Northern District of California and

15  elsewhere, the defendants,

16  SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,

17

18  unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and

19  instrumentalities of interstate commerce, the mails, and of facilities of national securities

20  exchanges, used and employed, in connection with the purchase and sale of securities,

21  manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and

22  artifices to defraud; (b) making untrue statements of material fact and omitting to state material

23  facts necessary in order to make the statements made, in light of the circumstances under which

24  they were made, not misleading; and (c) engaging in acts, practices, and course of business which

25  operated as a fraud and deceit upon members of the investing public and others, in connection

26  with the purchase and sale of securities, and did aid and abet in the same.

27  80. Specifically, on or about February 22, 2005, SHOLEH A. HAMEDANI and

28  NASSER V. HAMEDANI unlawfully, willfully, and knowingly executed the scheme and artifice

SUPERSEDING INDICTMENT 18

1 to defraud by filing, and causing to be filed, with the SEC, a document known as SEC Form 8-K
2 that contained therein untrue statements of material fact that, among other things, TCI's board of
3 directors had approved the issuance of approximately 6,527,314 shares of TCI stock to Shadrack
4 Films upon the conversion of TCI's current debt to Shadrack Films of approximately $457,000,
5 priced at a conversion price of $.07 per share, based on the most recent sale of a share of TCI's
6 common stock which occurred in October 2002 in a private transaction.

7 81.    In fact, on or about February 22, 2005, SHOLEH A. HAMEDANI and NASSER
8 V. HAMEDANI omitted the material fact that there had been thousands of shares of TCI sold to
9 numerous investors between on or about October 2002 and on or about February 22, 2005, at
10 prices ranging from $.50 to $2.00 per share.

11    All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of
12 Federal Regulations, Sections 240.10b-5; and Title 18 , United States Code, Section 2.

13

14 COUNT THREE: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5 (Securities Fraud);
15 18 U.S.C. § 2 (Aiding and Abetting)

16    82.    Paragraphs 1 through 69 and paragraphs 70 through 81, as to the factual
17 allegations only, are realleged as if fully set forth herein.

18    83.    On or about April 20, 2005, in the Northern District of California and elsewhere,
19 the defendants,

20                      SHOLEH A. HAMEDANI and
                        NASSER V. HAMEDANI,
21

22 unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and
23 instrumentalities of interstate commerce, the mails, and of facilities of national securities
24 exchanges, used and employed, in connection with the purchase and sale of securities,
25 manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and
26 artifices to defraud; (b) making untrue statements of material fact and omitting to state material
27 facts necessary in order to make the statements made, in light of the circumstances under which
28 ////

SUPERSEDING INDICTMENT          19

1  they were made, not misleading; and (c) engaging in acts, practices, and course of business which
2  operated as a fraud and deceit upon members of the investing public and others, in connection
3  with the purchase and sale of securities, and did aid and abet in the same.

4  84.  Specifically, on or about April 20, 2005, SHOLEH A. HAMEDANI and NASSER
5  V. HAMEDANI unlawfully, willfully, and knowingly executed the scheme and artifice to
6  defraud by filing, and causing to be filed, with the SEC, a document known as SEC Form 8-K
7  that contained therein untrue statements of material fact that, among other things, TCI's
8  management had discovered a purported loan agreement that TCI had entered into with five of its
9  shareholders on October 11, 2002, but that the agreement had not been disclosed in any of TCI's
10  previous SEC filings or otherwise included as an exhibit as a result of an error of omission.

11  85.  In fact, on or about April 20, 2005, SHOLEH A. HAMEDANI and NASSER V.
12  HAMEDANI omitted the material fact that the transaction described in so-called October 11,
13  2002 loan agreement had not occurred.

14  All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of
15  Federal Regulations, Sections 240.10b-5; and Title 18 , United States Code, Section 2.

16

17  COUNT FOUR: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5, 240.10b-1, and 240.10b-
18  2 (Securities Fraud); 18 U.S.C. § 2 (Aiding and Abetting)

19  86.  Paragraphs 1 through 69 and paragraphs 70 through 85, as to the factual
20  allegations only, are realleged as if fully set forth herein.

21  87.  On or about June 8, 2005, in the Northern District of California and elsewhere, the
22  defendants,

23  SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,
24

25  unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and
26  instrumentalities of interstate commerce, the mails, and of facilities of national securities
27  exchanges, used and employed, in connection with the purchase and sale of securities,
28  ////

SUPERSEDING INDICTMENT                    20

1  manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and
2  artifices to defraud; (b) making untrue statements of material fact and omitting to state material
3  facts necessary in order to make the statements made, in light of the circumstances under which
4  they were made, not misleading; and (c) engaging in acts, practices, and course of business which
5  operated as a fraud and deceit upon members of the investing public and others, in connection
6  with the purchase and sale of securities, and did aid and abet in the same.

7      88.    Specifically, on or about June 8, 2005, SHOLEH A. HAMEDANI and NASSER
8  V. HAMEDANI unlawfully, willfully, and knowingly executed the scheme and artifice to
9  defraud by filing, and causing to be filed, with the SEC, a document known as SEC Form 10-
10  KSB that contained therein untrue statements of material fact that, among other things, TCI's
11  management had discovered a purported loan agreement that TCI had entered into with five of its
12  shareholders on October 11, 2002, but that the agreement had not been disclosed in any of TCI's
13  previous SEC filings or otherwise included as an exhibit as a result of an error of omission.

14      89.    In fact, on or about June 8, 2005, SHOLEH A. HAMEDANI and NASSER V.
15  HAMEDANI omitted the material fact that that the transaction described in so-called October 11,
16  2002 loan agreement had not occurred.

17      All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of
18  Federal Regulations, Sections 240.10b-5; and Title 18 , United States Code, Section 2.

19

20  COUNT FIVE: 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5, 240.10b-1, and 240.10b-2
21  (Securities Fraud); 18 U.S.C. § 2 (Aiding and Abetting)

22      90.    Paragraphs 1 through 69 and paragraphs 70 through 89, as to the factual
23  allegations only, are realleged as if fully set forth herein.

24      91.    On or about August 15, 2005, in the Northern District of California and
25  ////
26  ////
27  ////
28  ////

SUPERSEDING INDICTMENT          21

1   elsewhere, the defendants,

2                           SHOLEH A. HAMEDANI and
                            NASSER V. HAMEDANI,
3

4   unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and

5   instrumentalities of interstate commerce, the mails, and of facilities of national securities

6   exchanges, used and employed, in connection with the purchase and sale of securities,

7   manipulative and deceptive devices and contrivances by: (a) employing devices, schemes, and

8   artifices to defraud; (b) making untrue statements of material fact and omitting to state material

9   facts necessary in order to make the statements made, in light of the circumstances under which

10  they were made, not misleading; and (c) engaging in acts, practices, and course of business which

11  operated as a fraud and deceit upon members of the investing public and others, in connection

12  with the purchase and sale of securities, and did aid and abet in the same.

13          92.     Specifically, on or about August 15, 2005, SHOLEH A. HAMEDANI and

14  NASSER V. HAMEDANI executed the scheme and artifice to defraud by filing, and causing to

15  be filed, with the SEC, a document known as SEC Form 10-QSB that contained therein untrue

16  statements of material fact that, among other things, TCI's management had discovered a

17  purported loan agreement that TCI had entered into with five of its shareholders on October 11,

18  2002, but that the agreement had not been disclosed in any of TCI's previous SEC filings or

19  otherwise included as an exhibit as a result of an error of omission.

20          93.     In fact, on or about August 15, 2005, SHOLEH A. HAMEDANI and NASSER V.

21  HAMEDANI omitted the material fact that that the transaction described in so-called October 11,

22  2002 loan agreement had not occurred.

23          All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of

24  Federal Regulations, Sections 240.10b-5, 240.10b5-1, and 240.10b-2; and Title 18 , United

25  States Code, Section 2.

26

27  COUNT SIX: 18 U.S.C. § 1348 (Securities Fraud)

28          94.     Paragraphs 1 through 69 and paragraphs 70 through 93, as to the factual

SUPERSEDING INDICTMENT          22

1 | allegations only, are realleged as if fully set forth herein.

2 | 95. Beginning on or about February 2002, and continuing to on or about October

3 | 2006, in the Northern District of California and elsewhere, the defendants

4 | SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,

5 |

6 | knowingly executed and attempted to execute a scheme and artifice to defraud in connection with

7 | a security, to wit, the securities of TCI, an issuer with a class of securities registered under

8 | Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) and that is required to file

9 | reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), and

10 | knowingly executed and attempted to execute a scheme and artifice to obtain, by means of false

11 | and fraudulent pretenses, representations, and promises, money and property in connection with

12 | the purchase and sale of a security, to wit, the securities of TCI, an issuer with a class of

13 | securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) and

14 | that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15

15 | U.S.C. 78o(d)).

16 | 96. On or about May 13, 2004, defendants executed the scheme and artifice to defraud

17 | by filing, and causing to be filed, with the SEC in or about Washington, D.C., a document known

18 | as SEC Form 424B2 (also known as a prospectus), that contained therein materially false and

19 | fraudulent pretenses, representations and promises that, among other things, proceeds from the

20 | sale of the securities being offered in the prospectus would be used to implement TCI's marketing

21 | and sales plan, for technical operations, and to provide general operating capital, as set forth in

22 | the prospectus in the sections entitled Use of Proceeds and Plan of Operation, when, in fact, each

23 | defendant intended to use the proceeds from the sale of the securities being offered in the

24 | prospectus for other purposes, including personal expenses not related to TCI.

25 | 97. In addition, the SEC Form 424B2 also contained therein materially false and

26 | fraudulent pretenses, representations and promises that, among other things, the prospectus

27 | identified by name all of TCI's current officers and directors and did not list any role for

28 | NASSER V. HAMEDANI as a officer or director in TCI, when, in fact, from on or about

SUPERSEDING INDICTMENT 23

1 | February 2002 through on or about October 2006, NASSER V. HAMEDANI controlled TCI by,
2 | among other things, arranging for the purchase of TCI, acting as Chairman of TCI, managing the
3 | sale of TCI shares to outside investors, and controlling the bank accounts into which TCI's
4 | investor monies were deposited.

5 | All in violation of Title 18, United States Code, Section 1348.

6 |

7 | COUNT SEVEN: 15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2 (False Statement to Accountants);
8 | 18 U.S.C. § 2 (Aiding and Abetting)

9 | 98. Paragraphs 1 through 69 and paragraphs 70 through 97, as to the factual
10 | allegations only, are realleged as if fully set forth herein.

11 | 99. On or about June 23, 2005, in the Northern District of California and elsewhere,
12 | the defendants,

13 |
SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,
14 |

15 | did knowingly and willfully make and cause to be made materially false and misleading
16 | statements and omissions to TCI's auditors in connection with the audit and examination of
17 | TCI's financial statements, and in connection with the preparation of documents and reports
18 | required to be filed with the SEC, and did knowingly and willfully omit to state material facts
19 | necessary in order to make statements made, in light of the circumstances under which such
20 | statements were made, not misleading, and did aid and abet in the same.

21 | 100. On or about April 2005, SHOLEH A. HAMEDANI, aided and abetted by
22 | NASSER V. HAMEDANI, provided a copy of the so-called October 11, 2002 loan agreement to
23 | TCI's outside auditors in order to prepare the restatement of its earnings.

24 | 101. On or about June 23, 2005, SHOLEH A. HAMEDANI executed a management
25 | representation letter to TCI's outside auditors, in which she represented, among other things, (a)
26 | there were no material transactions that have not been properly recorded in the accounting
27 | records underlying the interim financial information; and (b) she had no knowledge of any fraud
28 | or suspected fraud affecting TCI involving management or others where fraud could have a

SUPERSEDING INDICTMENT 24

1    material effect on interim financial information.

2        102.    In fact, on or about June 23, 2005, SHOLEH A. HAMEDANI and NASSER V.

3    HAMEDANI omitted the material fact that the that the transaction described in so-called October

4    11, 2002 loan agreement had not occurred.

5        All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal

6    Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2.

7

8    COUNT EIGHT: 15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2 (False Statement to Accountants);

9    18 U.S.C. § 2 (Aiding and Abetting)

10       103.    Paragraphs 1 through 69 and paragraphs 70 through 102, as to the factual

11   allegations only, are realleged as if fully set forth herein.

12       104.    On or about August 10, 2005, in the Northern District of California and

13   elsewhere, the defendants,

14                         SHOLEH A. HAMEDANI and
                           NASSER V. HAMEDANI,
15

16   did knowingly and willfully make and cause to be made materially false and misleading

17   statements and omissions to TCI's auditors in connection with the audit and examination of

18   TCI's financial statements, and in connection with the preparation of documents and reports

19   required to be filed with the SEC, and did knowingly and willfully omit to state material facts

20   necessary in order to make statements made, in light of the circumstances under which such

21   statements were made, not misleading, and did aid and abet in the same.

22       105.    On or about April 2005, SHOLEH A. HAMEDANI, aided and abetted by

23   NASSER V. HAMEDANI, provided a copy of the so-called October 11, 2002 loan agreement to

24   TCI's outside auditors in order to prepare the restatement of its earnings.

25       106.    Specifically, on or about August 10, 2005, SHOLEH A. HAMEDANI executed a

26   management representation letter to TCI's outside auditors, in which she represented, among

27   other things, (a) there were no material transactions that have not been properly recorded in the

28   accounting records underlying the interim financial information; and (b) she had no knowledge

SUPERSEDING INDICTMENT            25

1 | of any fraud or suspected fraud affecting TCI involving management or others where fraud could
2 | have a material effect on interim financial information.

3 | 107. In fact, on or about August 10, 2005, SHOLEH A. HAMEDANI and NASSER V.
4 | HAMEDANI omitted the material fact that the that the transaction described in so-called October
5 | 11, 2002 loan agreement had not occurred.

6 | All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal
7 | Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2.

8

9 | COUNT NINE: 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5) and 78ff, 17 C.F.R. § 240.13b2-1
10 | (Falsifying Books, Records, and Accounts); 18 U.S.C. § 2 (Aiding and Abetting)

11 | 108. Paragraphs 1 through 69 and paragraphs 70 through 107, as to the factual
12 | allegations only, are realleged as if fully set forth herein.

13 | 109. Between on or about February 23, 2005 and on or about October 2006, in the
14 | Northern District of California and elsewhere, the defendants,

15 | SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,
16

17 | did knowingly and willfully, directly and indirectly, falsify and cause to be falsified books,
18 | records, and accounts of TCI, and did aid and abet in the same.

19 | All in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5) and
20 | 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-1; and Title 18, United States
21 | Code, Section 2.

22

23 | COUNT TEN: 18 U.S.C. § 371 (Conspiracy to Commit Obstruction)

24 | 110. Paragraphs 1 through 69 and paragraphs 70 through 109, as to the factual
25 | allegations only, are realleged as if fully set forth herein.

26 | 111. From on or about October 2005 through on or about June 2008, in the Northern
27 | ////
28 | ////

1 | District of California and elsewhere, the defendants,

2 | SHOLEH A. HAMEDANI and
NASSER V. HAMEDANI,
3 |

4 | and others unlawfully, willfully, and knowingly, did conspire and agree together and with each

5 | other to commit an offense against the United States, to wit, obstruction, in violation of Title 18

6 | United States Code, Sections 371 and 1505.

7 | 112. It was part and object of the conspiracy that SHOLEH A. HAMEDANI, NASSER

8 | V. HAMEDANI and others unlawfully, willfully, and knowingly, directly and indirectly,

9 | corruptly influenced, obstructed, and impeded, and endeavored to corruptly influence, obstruct,

10 | and impede, the proper and due administration of law under which a pending proceeding was

11 | being had before a department or agency of the United States, to wit, the SEC and its

12 | investigation into securities fraud relating to the registration and sales of securities issued by TCI,

13 | and specifically as to the existence of the so-called October 11, 2002 loan agreement, in violation

14 | of Title 18, United States Code, Section 1505.

15 |

16 | The Manner and Means of the Conspiracy to Obstruct

17 | 113. Among the manner and means by SHOLEH A. HAMEDANI, NASSER V.

18 | HAMEDANI, and others carried out this conspiracy to obstruct were the following:

19 | a. SHOLEH A. HAMEDANI, NASSER V. HAMEDANI and others made

20 | false and misleading statements to the SEC during interviews and depositions, to wit, the

21 | existence of the so-called October 11, 2002 loan agreement, with an intent to corruptly influence,

22 | obstruct, and impede the SEC's investigation;

23 | b. SHOLEH A. HAMEDANI, NASSER V. HAMEDANI and others

24 | provided, and attempted to provide, documents and other materials to the SEC, to wit, the

25 | existence of the so-called October 11, 2002 loan agreement, with an intent to corruptly influence,

26 | obstruct, and impede the SEC's investigation.

27 | ////

28 | ////

SUPERSEDING INDICTMENT 27

1       The Overt Acts of the Conspiracy to Obstruct

2       114.    In furtherance of the conspiracy and to effect the illegal object thereof, SHOLEH

3   A. HAMEDANI and NASSER V. HAMEDANI committed and caused others to commit the

4   following overt acts, among others, in the Northern District of California and elsewhere:

5                a.      On or about October 25, 2005, NASSER V. HAMEDANI made

6   statements to the SEC during a sworn interview.

7                b.      On or about October 26, 2005, SHOLEH A. HAMEDANI made

8   statements to the SEC during a sworn interview.

9                c.       On or about January 6, 2006, NASSER V. HAMEDANI made statements

10  to the SEC during a sworn interview.

11               d.      On or about January 9, 2006, SHOLEH A. HAMEDANI made statements

12  to the SEC during a sworn interview.

13               e.      On or about March 27, 2006, NASSER V. HAMEDANI made statements

14  to the SEC during a sworn interview.

15               f.       On or about March 31, 2006, SHOLEH A. HAMEDANI made statements

16  to the SEC during a sworn interview.

17               g.      On or about January 9, 2008, SHOLEH A. HAMEDANI made statements

18  to the SEC during a sworn deposition.

19               h.      On or about January 11, 2008, NASSER V. HAMEDANI made statements

20  to the SEC during a sworn deposition.

21               i.       On or about June 26, 2008, SHOLEH A. HAMEDANI executed a

22  declaration under penalty of perjury that was subsequently filed with the United States District

23  Court for the Northern District of California.

24           All in violation of Title 18, United States Code, Section 371.

25

26  COUNT ELEVEN: 18 U.S.C. § 1505 (Obstruction)

27      115.    Paragraphs 1 through 69 and paragraphs 70 through 114, as to the factual

28  allegations only, are realleged as if fully set forth herein.

SUPERSEDING INDICTMENT            28

1    116.    Between on or about October 25, 2005, and on or about June 26, 2008, in the

2  Northern District of California and elsewhere, the defendant,

3                                   SHOLEH A. HAMEDANI,

4  unlawfully, willfully, and knowingly, corruptly influenced, obstructed, and impeded, and

5  endeavored to corruptly influence, obstruct, and impede, the proper and due administration of

6  law under which a pending proceeding was being had before a department or agency of the

7  United States, to wit, the SEC and its investigation into securities fraud relating to the

8  registration and sales of securities issued by TCI, and specifically as to the existence of the so-

9  called October 11, 2002 loan agreement.

10    All in violation of Title 18, United States Code, Section 1505.

11

12  COUNT TWELVE: 18 U.S.C. § 1505 (Obstruction)

13    117.    Paragraphs 1 through 69 and paragraphs 70 through 116, as to the factual

14  allegations only, are realleged as if fully set forth herein.

15    118.    Between on or about January 6, 2006, and on or about March 27, 2006, in the

16  Northern District of California and elsewhere, the defendant,

17                                   NASSER V. HAMEDANI,

18  unlawfully, willfully, and knowingly, corruptly influenced, obstructed, and impeded, and

19  endeavored to corruptly influence, obstruct, and impede, the proper and due administration of

20  law under which a pending proceeding was being had before a department or agency of the

21  United States, to wit, the SEC and its investigation into securities fraud relating to the

22  registration and sales of securities issued by TCI, and specifically as to the existence of the so-

23  called October 11, 2002 loan agreement.

24    All in violation of Title 18, United States Code, Section 1505.

25  ////

26  ////

27  ////

28  ////

1                                          FORFEITURE ALLEGATION

2         119.     Paragraphs 1 through 69 and paragraphs 70 through 118, as to the factual

3 allegations only, are realleged as if fully set forth herein and by this reference fully incorporated

4 herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States

5 Code, Section 981(a)(1)(C), Title 21, and Title 28, United States Code, Section 2461.

6         120.     Upon a conviction of any of the offenses alleged in Counts One through Five, the

7 defendants,

8                                 SHOLEH A. HAMEDANI and
                                 NASSER V. HAMEDANI,

9

10 shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C)

11 and Title 28, United States Code, Section 2461, any property (real and personal) which

12 constitutes or is derived from proceeds of said violations as alleged in Counts One through Five

13 of this Superseding Indictment, or any property traceable to said offenses.

14         121.     If, as a result of any act or omission of the defendants, any of said property

15              a.       cannot be located upon the exercise of due diligence;

16              b.       has been transferred or sold to or deposited with, a third person;

17              c.       has been placed beyond the jurisdiction of the Court;

18              d.       has been substantially diminished in value; or

19              e.       has been commingled with other property which, without difficulty cannot

20                    be subdivided;

21 any and all interest defendants have in any other property, up to approximately value of the

22 property subject to forfeiture, shall be forfeited to the United States, pursuant to Title 21, United

23 ////

24 ////

25 ////

26 ////

27 ////

28 ////

SUPERSEDING INDICTMENT           30

1   States Code, Sections U.S.C. § 853(p), as incorporated by Title 28, United States Code, Section

2   2461(c).

3

4   DATED:_____ 1/21/09                            A TRUE BILL

5

6

7                                                    Amper newmonte

8                                                    FOREPERSON

9

10  JOSEPH P. RUSSONIELLO
    United States Attorney
11

12

13

14

15  BRIAN J. STRETCH
    Chief, Criminal Division
16  (Approved as to form:
                    AUSA Timothy J. Lucey
17

18

19

20

21

22

23

24

25

26

27

28

SUPERSEDING INDICTMENT          31